**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Lynn Singh, | No. CV-19-02315-PHX-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 16, "Pl. Br."), the Commissioner's Response (Doc. 17, "Def. Br."), Plaintiff's Reply (Doc. 22, "Reply"), and the Administrative Record (Doc. 12, "R."). For the following reasons, the decision is affirmed.

## I.   BACKGROUND[1]

On May 23, 2015, Plaintiff filed her application for benefits, alleging disability as of April 29, 2010 due to severe depression, anxiety, restless legs, and joint and muscle pain. (R. at 13, 219.) Following denial of the application at the initial and reconsideration levels, a hearing before an administrative law judge ("ALJ") was held on December 21, 2017. (*Id.*

---

[1]   The Court has reviewed the entirety of the medical evidence. In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

at 13, 41–75.)  On March 28, 2018, the ALJ issued a written decision finding Plaintiff not disabled.  (*Id.* at 13–32.)  Therein, the ALJ found Plaintiff had "severe"[2] impairments of morbid obesity, alcohol dependence in reported remission, knee arthritis, depressive disorder, anxiety disorder, and cluster B personality features.  (*Id.* at 17.)  Despite these impairments, the ALJ found Plaintiff retained the residual functional capacity ("RFC")[3] to perform "light"[4] work with various physical and mental limitations.[5]  (*Id.* at 20.)  Specifically, the ALJ found that Plaintiff was limited to tasks that could be learned by demonstration within 30 days and that while she could work in the vicinity of others, she could not work in tandem with coworkers and could only have occasional interaction with coworkers and supervisors.  (*Id.*)  Based on these findings and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform work in the national economy as a remnant cutter, hand trimmer, and basket filler and was therefore not disabled.  (*Id.* at 31–32, 70–71.)  Afterward, the Appeals Council denied review and the decision become final.  (*Id.* at 1-3.)

## II.    LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").  The Court may affirm, modify, or reverse

---

[2]    An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3]    "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

[4]    *See* 20 C.F.R. § 404.1567(b).

[5]    Because Plaintiff explicitly limited the scope of her appeal to the ALJ's evaluation of her mental impairments and testified at the hearing that her physical impairments do not prevent her from working, the Court will omit discussion of Plaintiff's physical impairments and associated limitations.  (*See* Pl. Br. at 3; R. at 68.)

the decision, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").  "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Trevizo*, 871 F.3d. at 675.  "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."  *Id.*  "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  There is no harm where an error is "inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity."  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis.  20 C.F.R. § 404.1520(a).  The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth.  *Molina*, 674 F.3d at 1110.  At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled, and the inquiry ends.  *Id.*  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment.  *Id.*

§ 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

### A.   The ALJ Did Not Err In Discounting Plaintiff's Subjective Allegations.

First, Plaintiff argues that the ALJ improperly rejected her allegations of disabling symptoms and limitations associated with her depression and anxiety. (Pl. Br. at 24–29; *see* R. at 21–25, 43–68 [hearing testimony], 230–38 [application].) As noted by the ALJ, Plaintiff alleged in her application that her impairments affected talking, hearing, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. (R. at 21, 235.) She reported being unable to focus, an inability to go out alone, forgetfulness, decreased socialization, irritability, problems maintaining schedule, difficulties following instructions, paranoia, and problems handling stress and changes in routine. (*Id.* at 21, 232–36.) At the hearing, Plaintiff testified that she has panic attacks occurring 1-2 times a week due to anxiety which leave her "unable to focus" for 20-30 minutes and depression that keeps her from getting out of bed such that she would miss work "[t]wo to three times a week on some weeks." (*Id.* at 49–51, 58.)

The ALJ discounted these allegations on account of (1) purported inconsistencies between them and Plaintiff's reported activities and (2) a lack of corroboration from the objective medical records. (*Id.* at 21–25.) Instead, the ALJ found that Plaintiff's "reports,

testimony, and the objective medical evidence indicate that she maintains the ability to perform work consistent with the mental limitations set forth in the [RFC]," *i.e.*, work involving only tasks that can be learned by demonstration in 30 days, occasional in person interaction with the public, and occasional interaction with coworkers and supervisors without working in tandem with them. (*Id.* at 25, 20.)

Absent evidence of malingering, the ALJ may only discount a claimant's allegations for "specific, clear and convincing" reasons supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113; *see Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming rejection of a claimant's testimony where claimant's reported activities "suggest[ed] that [his] later claims about the severity of his limitations were exaggerated"). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). Lastly, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch*

1   *v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see Lingenfelter*, 504 F.3d at 1040.[6] "[T]he

2   ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."

3   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

4          The ALJ's reasons here are specific, clear, convincing, and supported by substantial

5   evidence.  First, the noted inconsistencies between Plaintiff's alleged symptoms and her

6   reported activities were a valid reason to discount her allegations.  Specifically, the ALJ

7   noted that Plaintiff reported taking care of her severely disabled daughter, taking care of

8   her mother after surgery, caring for pets, attending a conference in San Diego, traveling to

9   Iowa, going to Disney World, preparing meals, interacting with her child's teachers and

10  counselors, attending community college, driving a car, shopping in stores and online,

11  reading the news, doing household chores, watching television, and going out alone.  (R.

12  at 21–22, citing records.)  While not every one of these activities is inconsistent with

13  Plaintiff's allegations (*i.e.*, a person can be severely depressed and watch television with

14  their pet), some of these activities do stand in stark contrast to the allegations.  For instance,

15  Plaintiff indicated in her application that she cannot go out alone because she struggles

16  with "social anxiety" and testified that she is "too scared to go out."  (*Id.* at 58, 233.)

17  However, as noted by the ALJ, she attended a conference in San Diego, shopped in stores,

18  traveled to Iowa, went out alone, and went to Disney World.  Although Plaintiff testified

19  that she had some difficulty at Disney World and shopping in stores, the ALJ properly

20  considered her engagement in these activities to the extent that they contradicted her claims

21  of a totally debilitating impairment.[7]  *See Molina*, 674 F.3d at 1113.  Moreover, despite

22  _____

23  [6]     The Court of Appeals' statement in *Burch*, 400 F.3d at 681 belies Plaintiff's

24  assertion that "[t]he ALJ's belief that the severity of a claimant's reported symptoms may

25  be rejected on the basis the 'symptoms are not entirely consistent with the medical evidence

     of record' is a fundamental legal error."  (Pl. Br. at 25.)  The ALJ may rely on a lack of

26  corroborative medical evidence in discounting a claimant's subjective allegations so long

     as it is not the sole basis for doing so.

27  [7]     Plaintiff testified that she has a "hard time going to the grocery store."  (R. at 57.)

28  Similarly, she testified she had "problems" being at Disney World but that she "breathed

     through it" and "was medicated with Xanax."  (*Id.* at 60.)  She testified that she "forgot"

alleging issues with concentration, Plaintiff testified that she "did okay" in classes that she took at a community college.  (R. at 66.)  When asked by the ALJ why she could not do "a less stressful job," *i.e.*, parking lot cashier, Plaintiff responded that "meeting strangers" would be a problem for her.  (*Id.* at 66.)  However, as noted by the ALJ, Plaintiff interacted with her child's teachers and counselors and went to Disney World.  (*Id.* at 21.)  Accordingly, the Court finds no error in the ALJ's discounting of Plaintiff's allegations of disabling symptoms and limitations, as those allegations were inconsistent with her reported activities.

Turning to the medical evidence, the ALJ noted that while Plaintiff "received intensive outpatient mental health therapy, . . . the rest of her psychiatric treatment and appearance of symptoms is intermittent as the symptoms waxed and waned."  (*Id.* at 22.)  The ALJ noted that Plaintiff was "stable when she was on her medications" and that "[t]he severity of her symptoms appeared to be more tied to family and financial stress and adherence to her psychiatrist prescriptions."  (*Id.*)  The ALJ further noted various normal findings and the absence of abnormal findings noted by treating and examining sources on examination, including, *inter alia*: euthymic mood, normal speech, appropriate affect, good eye contact, good concentration, denial of hallucinations or delusions, denial of suicidal ideation, logical thought processes, good judgment, and fair insight.  (*Id.* at 22–25, citing records.[8])  However, the ALJ also noted various abnormal findings, including, *inter alia*: complaints of depression, anxiety, tearfulness, irritability, poor concentration, excessive sleep, confusion, preoccupied thoughts, and melancholy.  (*Id.* at 22, citing records.)  Again, the Court finds no error.  While not every finding noted by the ALJ directly undermines Plaintiff's allegations, some of the findings noted do contradict Plaintiff's allegations.  For instance, despite alleging issues concentrating, Plaintiff frequently was noted as having good concentration on examination.  Similarly, despite reporting issues talking, Plaintiff was frequently noted as having normal speech.

about the conference in San Diego.  (*Id.* at 64.)

[8]       *See, e.g.*, R. at 484, 642, 636, 633, 628, 616, 605, 598, 592, 587, 582, 575, 568.

1    The Court notes that the medical evidence could yield more than one rational

2 interpretation given the presence of some findings that may actually corroborate some of

3 Plaintiff's allegations, *i.e.*, a depressed or anxious mood, accompanying the normal

4 findings noted by the ALJ. (*See, e.g.*, *id.* at 642, 639, 636, 633, 628, 605, 598, 592, 582,

5 568, 1308.) However, given that the ALJ is the "final arbiter with respect to resolving

6 ambiguities in the medical evidence," *Tommasetti*, 533 F.3d at 1041, the Court defers to

7 the ALJ's resolution of these somewhat ambiguous records. The ALJ's interpretation of

8 these records is rational and therefore owed deference because, as discussed, some of the

9 noted findings *do* undermine Plaintiff's allegations, notwithstanding that some of them do

10 not. *See Trevizo*, 871 F.3d at 674–75; *see also Jamerson*, 112 F.3d at 1067.

11    Additionally, the Court defers to the ALJ's finding that medications improved

12 Plaintiff's symptoms, as evident by substantial evidence in the record wherein Plaintiff

13 reported that certain medications were beneficial (*see* R. at 574, 615, 623, 627, 632),

14 notwithstanding that she reported others were not (*see id.* at 591, 635, 639), which was

15 another clear and convincing reason to discount her allegations.[9]  *See Warre*, 439 F.3d at

16 1006. The record before the Court, as with many social security case records, is complex

17 and extensive but upon its review of this record in its entirety, the Court finds that

18 substantial evidence supports the ALJ's clear and convincing reasons for discounting

19 Plaintiff's allegations of disabling symptoms related to her depression and anxiety.[10]

20 //

21 //

22 //

23

24    [9]    On at least two occasions Plaintiff reported not taking her medication as prescribed.

25 On one occasion, she stated that she stopped taking her medication "because she was on
too many pills." (R. at 635, 639.) On another occasion, she stated she was not going to

26 take her medication until she saw a counselor. (*Id.* at 1293.)

27    [10]    Additionally, the Court notes that Plaintiff reportedly quit her job to care for her

28 daughter. (R. at 1271, 1277.)

1

**B.   The ALJ Did Not Err In Giving "Limited Weight" To The Opinions Of**
2           **The Examining Psychologist.**

3         Plaintiff argues that the ALJ failed to properly weigh the opinions of Rosalie

4  Hydock, Ph.D., a psychologist who examined Plaintiff at the behest of the Commissioner

5  on August 24, 2015.  (Pl. Br. at 16–24; *see* R. at 28, 1089–98.)  Dr. Hydock opined that

6  Plaintiff had "[m]oderate impairment of attention," "significant limitations in being able to

7  sustain regular attendance," "[s]ignificant impairment" in social interaction, and

8  "[s]ignificant impairment" in adapting to change."  (R. at 1097.)  The ALJ gave "limited

9  weight" to these opinions.  (*Id.* at 28.)

10        In general, opinions of treating medical sources are entitled to the greatest weight;

11  opinions of examining, non-treating sources are entitled to lesser weight; and opinions of

12  non-examining, non-treating sources are entitled to the least weight.  *Garrison v. Colvin*,

13  759 F.3d 995, 1012 (9th Cir. 2014).  "If a treating or examining doctor's opinion is

14  contradicted by another doctor's opinion, an ALJ may only reject it by providing specific

15  and legitimate reasons that are supported by substantial evidence."[11]  *Id.*  An ALJ satisfies

16  the substantial evidence requirement by "setting out a detailed and thorough summary of

17  the facts and conflicting evidence, stating his [or her] interpretation thereof, and making

18  findings."  *Id.*  In evaluating any medical opinion, the ALJ may consider: (1) whether the

19  source examined the claimant; (2) the length, frequency, nature, and extent of any treatment

20  relationship; (3) the degree of support the opinion has, particularly from objective medical

21  evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's

22  specialization; and (6) "other factors."  20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d

23  at 675.

24        The ALJ's reasons for giving limited weight to Dr. Hydock's opinions were specific

25  and legitimate and supported by substantial evidence.  First, the ALJ noted that Dr.

26  Hydock's examination showed only "minimal abnormal findings."  (R. at 28.)  For

27

---

[11]     Dr. Hydock's opinion is contradicted by the opinion of the State agency reviewing
28  psychologists who reviewed Plaintiff's application at the initial and reconsideration levels
and opined that she was not disabled.  (R. at 77–97, 99–119.)

instance, although Dr. Hydock opined that Plaintiff had "[s]ignificant impairment" in social interaction, she noted that Plaintiff was "polite and cooperative" and "engaged easily in conversation." (*Id.* at 1097.) It was only when Plaintiff reported "a high level of anxiety prior to her arrival at the examination site" and "inability to stay in public places including retail and social environments" that Dr. Hydock opined that she "would have difficulty adapting to an unfamiliar work environment" and therefore had "[s]ignificant impairment" in social interaction. (*Id.*) Moreover, while Dr. Hydock opined that Plaintiff had "[s]ignificant limitation in being able to sustain regular attendance," she noted that Plaintiff had driven herself to the examination and had arrived on time. (*Id.* at 1089, 1097.) Dr. Hydock's objective findings consisted of a euthymic mood, an affect that was labile and appropriate to content, appropriate verbal and non-verbal responses, normal speech, fair insight, and no evidence of confusion or misunderstanding of the content of the questions posed. (*Id.* at 1090.) Plaintiff scored a 28/30 on the Mini Mental Status Exam, and her "[r]esponses to items assessing executive function were within normal limits." (*Id.*) Additionally, Plaintiff "convincingly denied any present suicidal/homicidal ideation, intent or plans." (*Id.*)

Plaintiff, however, argues that "[t]he ALJ's reference to 'minimal abnormal findings' did not specify upon what findings she was relying" and "th[e] Court is left to guess what findings or lack of findings, were thought to support the ALJ's rationale." (Pl. Br. at 21.) These arguments are unavailing. Contrary to Plaintiff's assertion, the Court need not "guess" what findings were relevant to the ALJ's findings because the records from Dr. Hydock's examination speak for themselves and clearly note minimal abnormal findings, as detailed above. A plain reading of the relevant records enables the Court to reasonably discern the ALJ's path; accordingly, the Court finds no error. *Treichler*, 775 F.3d at 1099. Dr. Hydock's opinions were properly discounted because her examination findings failed to support them. *See* 20 C.F.R. § 404.1527(c) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit . . . opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings.") (internal citation omitted).

Second, the ALJ noted that Dr. Hydock's opinions were "not consistent with the medical evidence of record as a whole."  (R. at 28, citing *id.* at 479–96, 500–06, 649–70, 1089–98, 1126–39, 1267–1318, 1319–1396.)  This, too, was a specific and legitimate reason to discount them.  *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Batson*, 359 F.3d at 1195.   Plaintiff argues that "[t]he ALJ's citation to 170 pages of this record did not identify any specific inconsistencies" and "[s]uch vague references to the record are insufficient."  (Pl. Br. at 21.)  However, notwithstanding the arguably broad citations, the Court is nonetheless able to reasonably discern the ALJ's path here.  Elsewhere in the decision the ALJ discusses the medical evidence in greater detail, allowing for the Court to comprehend what findings within those records the ALJ considered and paid particular attention to.[12]  (*See* R. at 22–25.)

## C.  The ALJ Did Not Err In Giving "Little Weight" To Opinions From Plaintiff's Counselor.

Next, Plaintiff argues that the ALJ failed to properly weigh the opinions of her counselor, Darsi Axford, LPC.  (Pl. Br. at 16–24; *see* R. at 28–29.)

The ALJ considered a number of statements from Ms. Axford.  First, the ALJ considered a questionnaire Ms. Axford completed in which she opined that Plaintiff was "moderately limited" in various areas of mental functioning, including expressing personal feelings, dealing with people, and making judgments and decisions.  (*Id.* at 28–29, 395–97, 1230–32 [duplicate].)  She further opined that Plaintiff was "markedly limited" in other areas, including performing effectively under stress; directing, controlling or planning activities of others; and giving supervision to others.  (*Id.* at 396–97)  Next, the ALJ considered Ms. Axford's June 2012 and November 2016 opinions that Plaintiff was unable

---

[12]	The ALJ's findings pertaining to the medical evidence are discussed *supra* pp. 7–8.

- 11 -

to work due to depression and anxiety. (*Id.* at 29, 1167, 1500.) Last, the ALJ considered multiple check-box assessments of Plaintiff's mental functionality in which Ms. Axford opined that Plaintiff had various "moderately severe" to "severe" mental limitations, which, per VE testimony, would preclude all full-time work.[13]   (*Id.* at 29, 71 [VE testimony], 1397–98 [undated assessment, duplicate at R. 1520–21], 1399–1400 [April 2016 assessment], 1480–81 [March 2017 assessment], 1754–55 [October 2017 assessment].) The ALJ gave Ms. Axford's opinions "little weight." (*Id.* at 29.)

Under the Commissioner's regulations, a counselor is a "nonmedical source." 20 C.F.R. § 404.1502(e)(2).   A nonmedical source's opinion is evaluated using the same factors used for the evaluation of medical opinions, 20 C.F.R. §§ 404.1527(c)(1)–(6), discussed *supra*.  20 C.F.R. § 404.1527(f)(1).   The ALJ may reject the opinion of a nonmedical source for "reasons germane to [the] witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citation omitted).

Here, the ALJ gave five cognizable reasons for affording little weight to Ms. Axford's opinions, noting that: (1) the "given limitations are so extreme that [Plaintiff] would have been hospitalized and unable to function normally if they were true"; (2) the opinions "seem[ed] to be based on [Plaintiff's] subjective complaints rather than objective exam findings; (3) "[t]he opinions are vague with no explanation as to why the limitations exist"; (4) "a licensed professional counselor is not an acceptable medical source"; and (5) "the opinions are inconsistent with each other." (R. at 29, citing R. at 409.)

Plaintiff disputes all but one of these findings, omitting challenge to the ALJ's finding that Ms. Axford's opinions were vague and lacking explanation.  (*See* Pl. Br. at 18–20; Reply at 6.)  Absent such challenge, the Court presumes this finding was valid.  *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address a finding made by the ALJ because the appellant "failed to argue this issue with any specificity in his briefing" and noting that

---

[13]     The forms define "moderately severe" as being off-task for 16-20% of an 8-hour workday and "severe" as being off-task for more than 20% of an 8-hour workday. (*See, e.g.*, R. at 1481.)  The VE testified that an individual who was off-task for 15% of every 8-hour workday would be unable to perform any full-time work.  (*Id.* at 71.)

the Court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"); *see also Kim*, 154 F.3d at 1000.  Indeed, Ms. Axford's opinions note the existence of Plaintiff's mental impairments but Ms. Axford fails to specify how those impairments result in the opined-to limitations.[14]  As such, this was a germane reason to afford lesser weight to her opinions.  *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that opinion."); *Molina*, 674 F.3d at 1111 ("[T]he ALJ may permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.") (internal quotations and citations omitted).  Because the ALJ proffered at least one germane reason for rejecting Ms. Axford's opinions, the rejection was proper, and the Court need not address the ALJ's remaining reasons or Plaintiff's challenges thereto.[15]

**D.    The ALJ Did Not Err In Basing Her Nondisability Finding On The Opinions Of The State Agency Psychological Consultants.**

Lastly, Plaintiff argues that "[i]nstead of assigning proper weight to [Ms.] Axford and Dr. Hydock's assessments, the ALJ assigned 'great' and 'substantial' weight to the opinions of the [S]tate agency desktop reviewers" and, in doing so, allegedly "provided no

---

[14]    Ms. Axford's treatment notes likewise fail to provide the missing link between the impairments and the opined-to limitations.  More often than not, the notes are devoid of comments from Ms. Axford.  Any comments that are present are handwritten and, to a large extent, illegible, requiring a great deal of guesswork in deciphering them, which the Court will not do given the great potential for error in doing so.  (*See* R. at 373–478, 1105–1266, 1482–1513, 1727–53.)  What the Court can discern from them are typed words circled by Ms. Axford corresponding to Plaintiff's symptoms, *e.g.*, "depressed," "anxious," "tearful," *etc.*  (*See, e.g.*, *id.* at 1731.)  However, these circles do not provide adequate explanation for the limitations.

[15]    Even if the Court found one or more of the remaining reasons to be invalid, the resulting error would be harmless given that at least one of the ALJ's reasons for rejecting the opinions was valid under the applicable legal standard.  *Cf. Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on invalid reasons to reject claimant testimony was harmless error because the ALJ had also relied on at least one valid reason); *Batson*, 359 F.3d at 1197 (same).

1  explanation for departing from the differing legal standards for evaluation of opinions from
2  treating versus examining versus nontreating sources." (Pl. Br. at 22–23; *see* R. at 30.)

3      The ALJ gave "great" and "substantial" weight to the opinions of the State agency
4  psychological consultants, who opined that Plaintiff was "capable of simple and unskilled
5  work with superficial and occasional interaction with others." (R. at 30, 95, 116.) The
6  ALJ noted that their opinions were "consistent with the medical evidence, which shows
7  that [Plaintiff] displayed good eye contact, full orientation, good concentration, no
8  psychomotor agitation, normal speech, intact memory, no evidence of any thought
9  disorders, an appropriate and congruent affect, no delusions, a euthymic mood, logical and
10  goal directed thought processes, no symptoms of mania, no anxiety, appropriate thought
11  content, no auditory or visual hallucinations, good judgment and impulse control, no
12  suicidal ideation, good attention, and good judgment and insight." (*Id.* at 30, citing *id.* at
13  479–96, 500–06, 649–70, 1089–98, 1126–39, 1267–1318, 1319–1396.) The ALJ noted
14  that these findings were "consistent with an individual who is capable of simple and
15  unskilled work with superficial and occasional interaction." (*Id.*)

16      As noted previously, the opinions of a non-examining source are generally entitled
17  to the least evidentiary weight. *See Garrison*, 759 F.3d at 1012. However, such opinions
18  "may . . . serve as substantial evidence when the opinions are consistent with independent
19  clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957
20  (9th Cir. 2002). Moreover, the ALJ is not obligated to incorporate limitations in the RFC
21  from opinions that were properly rejected. *Batson*, 359 F.3d at 1197.

22      The Court finds no error. First, contrary to Plaintiff's assertion, the ALJ did not
23  depart from the applicable legal standards in rejecting the opinions of Ms. Axford and Dr.
24  Hydock. (Pl. Br. at 23.) As discussed *supra*, the ALJ provided legally sufficient reasons
25  for rejecting these opinions. As a result, the ALJ was not obligated to include limitations
26  from them in the RFC. *Batson*, 359 F.3d at 1197. Second, the ALJ's assignment of "great"
27  and "substantial" weight to the opinions of the State agency psychological consultants was
28  proper in light of their demonstrated consistency with the medical evidence noted by the

- 14 -

ALJ.  *See* 20 C.F.R. § 404.1527(c)(4).  Plaintiff's assertion that the absence of delusions, hallucinations, or a thought disorder "does nothing to detract from the treating and examining source assessments" is incorrect as Plaintiff stated in her application, in response to whether she "noticed any unusual behavior or fears," that she experienced "paranoia" and was "pacing at home."[16]  (Pl. Br. at 22; R. at 236.)  Thus, the absence of such findings diminishes the alleged severity of her mental impairments.  Plaintiff proffers no argument for why the other normal findings are not relevant. Because of the demonstrated consistency of the State agency psychological consultants' opinions with substantial evidence in the record, the ALJ permissibly relied on those opinions in finding Plaintiff not disabled.[17]  *Thomas*, 278 F.3d at 957.

      **IT IS THEREFORE ORDERED**, affirming the decision of the Commissioner.

      **IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

      Dated this 28th day of September, 2020.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge

---

[16]    Specifically, Plaintiff reported being paranoid of "what people think of me."  (R. at 1337.)  She also felt that "people are judging her and[/]or following her."  (*Id.* at 1377.)

[17]    Additionally, Plaintiff asserts that "familiarity with the legal requirement of the agency's disability program would not enhance the value of a medical opinion." (Reply at 6; *see* Def. Br. at 10.)  Plaintiff is incorrect, overlooking 20 C.F.R. § 404.1527(c)(6), which expressly states that "the amount of understanding of our disability programs and their evidentiary requirements a medical source has . . . [is a] relevant factor[] that we will consider in deciding the weight to give to a medical opinion."